# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARNELL WILKINS, | **)** | |
| | **)** | Civil Action No. 2: 12-cv-1152 |
| Plaintiff, | **)** | |
| | **)** | United States Magistrate Judge |
| v. | **)** | Cynthia Reed Eddy |
| | **)** | |
| SECRETARY WETZEL, *et al.*, | **)** | |
| Defendant. | **)** | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Presently before the Court is the Motion for Summary Judgment, with brief in support, filed by Defendants Secretary of PA Dept. of Corrections, Corrections Health Care Administrator, and Nurse Katrina Shriver (ECF Nos. 34 and 35, respectively), and the brief and response in opposition filed by Plaintiff, Darnell Wilkins (ECF Nos. 46 and 47).

The issues have been fully briefed and the factual record has also been thoroughly developed via Defendants' Concise Statement of Material Facts (ECF No. 36), the Appendix in Support of Defendants' Motion for Summary Judgment (ECF No. 37), the Plaintiff's Counterstatement of Facts (ECF No. 48), the Appendix to Plaintiff's Response to Motion for Summary Judgment (ECF No. 49), and Defendants' Response to Plaintiff's Additional Material Facts (ECF No. 50).

The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 6 and 30.

After a careful consideration of Defendants' motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Motion for Summary Judgment will be granted.

## BACKGROUND

Plaintiff, Darnell Wilkins, a state prisoner currently incarcerated at State Correctional Institution - Fayette, in LaBelle, PA, has filed a complaint pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Named as defendants are John Wetzel, Secretary of the Pennsylvania Department of Corrections ("DOC"); Susan Berrier, Corrections Health Care Administrator ("CHCA"), LPN Katrina Shriver, and Nurse Jane Doe. The Defendants, with the exception of Jane Doe, are represented by the Office of Attorney General. Defendant Jane Doe has not been served. *See* ECF No. 17, Notice of Inability to effectuate service filed by U.S. Marshal as to Jane Doe.

This case centers on two occasions in 2011, specifically, April 29, 2011 and December 10, 2011. Plaintiff alleges that on both occasions he ran out of his prescription eye drops that had been prescribed by an ophthalmology specialist and the pill line nurses (Defendants "Jane Doe" and LPN Shriver) either forgot to order refills or refused to give him a refill. Plaintiff alleges that these Defendants were negligent and/or deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

Plaintiff also alleges that Defendants CHCA Susan Berrier and Secretary Wetzel failed to properly or adequately train or supervise the nurses regarding the ordering and dispensing of medicine; that Defendant Berrier failed to adequately respond to Plaintiff's complaints about the nurses, and that Secretary Wetzel failed to require adequate pharmacy facilities at SCI-Fayette so that emergency medications could be available.

**Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Life Ins. Co*., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents ( i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex,* 477 U.S. at 322. *See also Saldana v. Kmart Corp*., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir.2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007). Importantly, however, in a case such as this one where there are video recordings of the incidents in question, the Court need not adopt the non-movant's version of the facts if the recording "blatantly contradict[s]" the non-movant's version "so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Thus, for example, the mere allegation by Plaintiff that he suffered from a serious medical need or that Defendants were deliberately indifferent to that need is insufficient to establish that there is a genuine issue of material fact. Rather, the allegation must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

### DISCUSSION

Defendants argue that summary judgment is appropriate because (i) Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and, in the alternative, that (ii) the record does not support a deliberate indifference and/or a due process claim. Defendants' arguments will be addressed seriatim.[1]

---

[1]    The Court notes that in his brief in opposition, Plaintiff appears to be responding to arguments made by Defendants that they are entitled to qualified immunity (ECF No. 46, at 1-7) and that Plaintiff is not entitled to relief because he has not suffered any physical injury (ECF No.

1. <u>Failure to Exhaust Administrative Remedies</u>[2]

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under

section 1983 . . . by a prisoner confined in jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The requirement that an inmate exhaust administrative remedies applies to all inmate

suits regarding prison life, including those that involve general circumstances as well as

particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002); *Concepcion v. Morton,* 306 F.3d 1347

(3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be

completed prior to the filing of an action. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The

exhaustion requirement is not a technicality, rather it is federal law which federal district courts

are required to follow. *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no

action shall be brought," Congress has "clearly required exhaustion").

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the

administrative review process in accordance with the applicable procedural rules of that

grievance system. *Woodford v. Ngo*, 548 U.S. 81, 87–91 (2006) ("Proper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules . . . ."). Importantly, the

exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally

---

46 at 7) . The Court has carefully reviewed Defendants' brief and finds that these two arguments
were not raised by Defendants in their motion for summary judgment.

[2]       Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive
the district court of subject matter jurisdiction. *Nyhuis v. Reno,* 204 F.3d 65, 69 n. 4 (3d Cir.
2000) ( "[W]e agree with the clear majority of courts that § 1997e(a) is <u>not</u> a jurisdictional
requirement, such that failure to comply with the section would deprive federal courts of subject
matter jurisdiction.").

defective. . . appeal." *Id.* at 83; *see also Spruill v. Gillis,* 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [ . . . ] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

The DOC maintains a grievance system which offers a three-phase grievance and appeals procedure. *See* DC–ADM 804. First, an inmate may submit a grievance to the inmate counselor within fifteen (15) days of the events giving rise to the grievance. The inmate is required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review." *Spruill v. Gillis*, 372 F.3d at 232, 233. Within ten (10) working days, the grievance coordinator transmits a decision to the inmate. Next, if the inmate is dissatisfied with the disposition of the grievance, he may, within ten (10) days of the grievance coordinator's decision, appeal to the Facility Manager/Superintendent for a second level of review, who must provide a decision within another ten (10) working days. *Id.* at 232. Finally, an inmate may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days of the decision of the Facility Manager/Superintendent, and the Secretary's Office has thirty days in which to issue a decision. *Id*.

The PLRA itself does not have a "name all defendants" requirement. *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 217 (2007)). However, the United States Court of Appeals for the Third Circuit has found that where the inmate fails to

6

specifically name the individual in the grievance or where the grievance is untimely or otherwise

defective, claims against an accused individual are procedurally defaulted. *Spruill v. Gillis*, 372

F.3d at 234. *See Woodford v. Ngo*, 548 U.S. at 90-91 (exhaustion of administrative remedies

under the PLRA requires "using all steps that the agency holds out," and "demands compliance

with an agency's deadlines and other critical procedural rules.")

In this case, it is evident from the summary judgment record that Plaintiff has failed to

exhaust his administrative remedies relative to his Eighth Amendment claims.

1.  *Grievance Number 370175*

In Plaintiff's first claim, he alleges that on April 29, 2011, he went to pick up his monthly

eye drops prescription refill and Nurse "Jane Doe" gave him the wrong eye drops. Upon inquiry,

Nurse Jane Doe told him that she had ordered and given Plaintiff the wrong eye drops, but was

re-ordering the correct medication. According to Plaintiff, two weeks later, on May 13, 2011,

Nurse Jane Doe told him at that time that she had forgotten to re-order the eye drops. On that

same day, Plaintiff saw PA Michelle Diggs about the delay in receiving his medication. PA

Diggs gave Plaintiff replacement drops that same day until his prescription could be filled.

Plaintiff filed Grievance Number 370175, dated June 22, 2011, in which he complains

that he suffered "headaches, extreme blurred vision, distress and anxiety" as a result of a nurse

giving him the wrong eye drops on April 29, 2011, and he had to wait approximately two (2)

weeks, until May 13, 2011, before receiving the correct prescription. Further, Plaintiff complains

that he "suffered loss of money" because as a result of having blurred vision due to not having

his correct prescription eye drops he made a mistake on his commissary order.

The grievance was rejected at all levels of administrative review because the grievance

was submitted more than fifteen (15) days working days after the events upon which it was

based.

The summary judgment record reflects that Grievance Number 370175 was dated June

22, 2011. (ECF No. 37-1, Exh. 1 at 2.) The following day, the grievance was denied by the

Administrative Officer as untimely. (*Id*. at 5.) Despite this finding, Plaintiff resubmitted his

grievance on June 28, 2011. (*Id*. a 6.) On June 30, 2011, the grievance was again rejected by the

Administrative Officer as untimely. (*Id*. at 8.) On August 22, 2011, Plaintiff sought to appeal the

denial of his grievance to the Facility Manager. (*Id.* at 9-10.) On September 14, 2011, the

Facility Manager also rejected Plaintiff's appeal after concurring with the judgment of the

Administrative Officer that Plaintiff's grievance was untimely. (*Id.* at 11.)

Accordingly, based on the summary judgment record, the Court finds that this claim fails

as a matter of law because it was not properly exhausted in compliance with the PLRA.

2.      *Grievance Number 395458*

In Plaintiff's second claim, he alleges that on December 10, 2011, he requested additional

eye drops from Defendant LPN Shriver, and that she rejected his request telling him he needed to

wait ten (10) more days. On December 20, 2011, ten (10) days later, Plaintiff saw an

ophthalmologist, who prescribed "two (2) bottles of the eye drops," rather than "just one (1)

bottle like he had been receiving." Complaint, at ¶ 8.

Plaintiff filed a grievance shortly thereafter on January 3, 2012 (Grievance

Number 395458). However, in this grievance Plaintiff complains that he is having

complications as a result of being denied eye drops "<u>two months ago</u>." (ECF No. 37-1, Exh. 2 at

3 (emphasis added)). He does not mention Defendant LPN Shriver or accuse anyone of refusing him eye drops on December 10, 2011.

The Court of Appeals for the Third Circuit has stated that the PLRA does not require perfect overlap between the grievance and the complaint; rather the two must simply share a factual basis. *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (unpublished). The allegations made by Plaintiff in Grievance Number 395458 simply do not match or share a factual basis with the claim Plaintiff has asserted in this lawsuit against Defendant Shriver. Accordingly, the Court finds that Grievance Number 395458 does not suffice to exhaust Plaintiff's administrative remedies and Defendant Shriver is entitled to summary judgment.

Likewise, to the extent that Plaintiff seeks to assert conclusory claims against Defendants CHCA Berrier and/or Secretary Wetzel for failure to train and supervise nurses, for inadequate grievance procedures, or for failure to require "adequate" pharmacies, he has never grieved any of those issues. Defendants Berrier and Wetzel are, therefore, also entitled to summary judgment.

In sum, Plaintiff did not fully exhaust any grievance concerning his claims. As stated by the Court of Appeals for the Third Circuit, "it is beyond the power of this court-or any other-to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis*, 204 F.3d at 73 (quotation omitted).

Because Plaintiff's claims were not properly exhausted, it is not necessary for the Court to reach the merits of Plaintiff's claims. However, in an abundance of caution, and assuming *arguendo*, that exhaustion did not bar Plaintiff's claims, the Court will proceed to address the merits.

2.      Eighth Amendment Claims

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).  The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll,* 991 F.2d 64, 68 (3d Cir.1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon,* 897 F.2d 103, 109 (3d Cir. 1990).

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. *Clark v. Doe,* No. 99–5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. *United*

*States ex rel. Walker v. Fayette Cnty.,* 599 F.2d 573, 575 n. 2 (3d Cir. 1979). Any attempt to

second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts

since such determinations remain a question of sound professional judgment. *Inmates of*

*Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Goodwin,*

551 F.2d 44, 48 (4th Cir. 1977)).

Defendants do not dispute that Plaintiff's medical needs were "serious." Instead,

Defendants contend that they are entitled to summary judgment on the basis that Plaintiff has

failed to put forth sufficient evidence to support a jury verdict in his favor on the issue of

deliberate indifference. The Court agrees.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff

has failed to demonstrate a genuine issue of material fact on the issue of deliberate indifference.

For example, in his Complaint, Plaintiff acknowledges that Nurse Jane Doe made an initial

mistake by ordering the wrong prescription, and then "forgot" to order the correct prescription.

Complaint, at ¶ 9. The law is clear that negligence or medical malpractice does not establish

deliberate indifference so as to give rise to a civil rights claim. *Durmer v. O'Carroll,* 991 F.2d

64, 69 (3d Cir. 1993).

Further, the Court finds that the record evidence does not support Plaintiff's claim that he

was denied eye drop refills in December 2011 for ten days, or that Defendant Shriver or anyone

else acted with deliberate indifference in withholding eye drops from him.

Rather, the medical evidence of record reflects a long history of treatment by

ophthalmologic and other outside specialists for Plaintiff's eye problems, including glaucoma in

both eyes, and medication issues. The medical records reflect that Plaintiff is blind in his right

eye and that Plaintiff has had a number of surgical procedures on his left eye. Plaintiff has been taking various prescription eye drops, including Timolol and Xalatan since at least 2008. The medical record of evidence also tellingly describes that Plaintiff would not always follow the refill schedule with his eye drops. At times, he would seek refills several days early; at other times, he was late and did not ask for refills under several days after the refill was available. *See* ECF. No. 37, Exh. 3, ¶ 5.

The medical evidence of record also contradicts Plaintiff's claim that he was denied eye drops refills in December 2011 for ten (10) days. The Medication Administration Record ("MAR") for November 2011, indicates that Plaintiff picked up his monthly prescription for Timolol on November 5, 2011, which means that his next pick up date would be December 5, 2011. The November MAR also reflects that he picked up his monthly prescription for Xalatan on November 8, 2011, which means that the next pick up date would be December 8, 2011. The DOC cannot locate the December MAR; however, the January 2012, MAR reflects that Plaintiff picked up his January refill for Timolol on January 2, 2012, and his January refill for Xalatan on January 8, 2012. According to the Declaration of Susan Berrier, based on the dates Plaintiff picked up his January refills, it appears that Plaintiff would have picked up his December refill for Timolol on December 3, 2011, and his Xalatan refill on December 9, 2011. Had he requested a refill only a week after he picked up his December refills, he would have been instructed to sign up for sick call as nurses cannot change a prescription or dispense additional drops - that is a decision only the pharmacy can make or that a doctor can order. *See* ECF No. 3701, Exh. 8, ¶ 6.

Plaintiff's examination with an ophthalmologist on December 20, 2011, was a routine, pre-scheduled appointment because Plaintiff was being treated for glaucoma. *Id*. at ¶ 12.

Further, the medical record evidence is void of any evidence that Plaintiff presented to medical staff with an emergency condition either in May or December 2011. Rather, on the two occasions when Plaintiff advised the medical staff that he had a problem with his eye drops (May 13 and December 21), the problem was immediately addressed.

Plaintiff's allegations about the unavailability of medications and pharmacy services is also belied by the record. The summary judgment record also reflects that the DOC has a contract with Diamond Pharmacy which delivers prescriptions to SCI-Fayette six (6) days a week. (ECF No.37, Exh. 3, ¶ 14.) When ordered by Noon, prescriptions are delivered by the following day. *Id.* Diamond Pharmacy also contracts with a local "back up" pharmacy for emergency deliveries (e.g., if an inmate returns from surgery and requires prescription meds on an immediate basis.) *Id.*

Finally, Plaintiff's claims of deliberate indifference against Defendants Berrier and Wetzel must fail as the summary judgment record is void of any evidence of personal involvement on their part. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id.* (quoting *Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991)). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Participation in the after-the-fact review of a grievance is not enough to establish personal involvement. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006)

(allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). *See also Cole v. Sobina*, Civ. No. 04–99J, 2007 WL 4460617 (W.D. Pa. 2007); *cf. Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd,* 142 F.3d 430 (3d Cir. 1998) (failure of prison officials to respond to inmate's grievance does not state a constitutional claim).

Plaintiff has not alleged that Defendants Berrier or Wetzel were, in any way, personally involved in the incidents of which he complains. Plaintiff's claims are classic respondeat superior and, therefore, do not state a claim for relief under Section 1983.

By presenting the above-cited evidence to the Court, Defendants have satisfied their initial burden of proving the absence of evidence supporting Plaintiff's claim. They have put forward evidence to show that while Plaintiff suffers from a serious medical need, they were in no way deliberately indifferent to Plaintiff's medical needs.

The burden now shifts to Plaintiff to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). He has not met that burden. The Court finds that the record is insufficient to establish deliberate indifference and that Plaintiff has not identified any specific facts, supported by evidence, which demonstrate a genuine issue of material fact for trial.

In sum, the Court finds that Defendants have satisfied their burden of showing that there is no genuine issue of material fact as to whether they were deliberately indifferent to Plaintiff's serious medical needs on April 29, 2011 and December 10, 2011. Accordingly, summary judgment should be entered in favor of Defendants on Plaintiff's Eighth Amendment claims.[3]

---

[3]    Plaintiff makes a reference to Equal Protection arguing that he was denied adequate

2.      Due Process Claim

        Plaintiff also appears to be asserting a due process claim against Defendants Berrier

and/or Wetzel in connection with the DOC grievance procedure because his request for a

"personal interview" was not granted.  Complaint at ¶ 24.

        It is well-settled that prisoners have no constitutional right to a grievance process, and a

prison official's denial of an inmate's grievance does not constitute a due process violation. *See*

*Burnside v. Moser*, 138 Fed. Appx. 414, 415 (3d Cir. 2005) (holding that a "state grievance

procedure does not confer any substantive constitutional rights upon prison inmates"); *Jackson v.*

*Beard*, 2008 WL 879923 at * 7 (E.D. Pa. Mar.31, 2008) ("inmate grievance procedures in

themselves do not confer a liberty interest protected by the Due Process Clause"); *Thibodeau v.*

*Watts*, 2006 WL 89213 at * 5 (M.D. Pa. Jan.6, 2006) ("Because a prison grievance procedure

does not confer any substantive constitutional right upon prison inmates, prison officials' failure

to comply with the grievance procedure is not actionable"). Thus, Plaintiff's claim that his due

process rights were violated by Defendants' denial of his request for a personal interview in

connection with his grievance will be dismissed.

---

medical care "because of him being a prisoner and/or because of his race (i.e., he is black). . . ."
Complaint, at ¶ 13.  Given his lack of specificity in asserting this point, and because the summary
judgment record is absolutely void of any evidence that Plaintiff was ever denied or delayed
access to medical treatment because of his custody status or race, this claim is summarily denied.

        Plaintiff also alleges in passing that "Defendants Nurse Jane Doe and Nurse [Shriver]"
conspired with prison officials to deny Plaintiff's grievances.  Complaint, at ¶ 20.  These bald
and conclusory factual averments about an alleged conspiracy are insufficient to state a claim on
which relief can be granted.

3.      Nurse Jane Doe

Service has yet to be accomplished on Defendant Nurse Jane; thus, Plaintiff's claims

against her still remain.[4]   Nonetheless, the Court will *sua sponte* grant her summary judgment

for the following reasons.

The United States Supreme Court recognizes "that district courts . . . possess the power to

enter summary judgment *sua sponte,* so long as the losing party was on notice that [he] had to

come forward with all of [his] evidence." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986);

*see also Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004); *Chambers*

*Dev. Co. v. Passaic Cnty. Utils. Auth*., 62 F.3d 582, 584 n.5 (3d Cir. 1995).  Before a district

court grants summary judgment to a non-moving party it must first place the adversarial party on

notice that the court is considering such *sua sponte* action.  *See Gibson*, 355 F.3d at 222.  Our

appellate court has explained that "notice" means "that the targeted party 'had reason to believe

the court might reach the issue and receive a fair opportunity to put its best foot forward.'"  *Id*. at

223 (quoting *Leyva v. On the Beach, Inc.,* 171 F.3d 717, 720 (1st Cir. 1999) and *Jardines*

*Bacata, Ltd. v. Diaq-Marquez*, 878 F.2d 1555, 1561 (1st Cir. 1989)) (quotations omitted).

Additionally,

> [w]here it appears clearly upon the record that all of the evidentiary materials that
> a party might submit in response to a motion for summary judgment are before the
> court, a *sua sponte* grant of summary judgment against that party may be
> appropriate if those materials show no material dispute of fact exists and that the
> other party is entitled to judgment as a matter of law.

*Id.* at 224 (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)).  Despite the general

notice requirement to the nonmoving party, our court of appeals has concluded that, notice to the

adversarial party is not required in three circumstances: (1) when there exists a fully developed

record; (2) when the adversarial party would not be prejudiced by a *sua sponte* grant of summary

judgment; and (3) when the decision is based on a purely legal issue. *Id.*

Although a court's *sua sponte* grant of summary judgment must be undertaken with the

utmost caution given the serious consequences to the adversarial party, in this instance such

action is appropriate. Plaintiff's Eighth Amendment deliberate indifference claim against

Defendant Jane Doe is identical and arises from the same set of factual allegations as his claims

against the moving Defendants, to which he responded extensively in his opposition briefs.

Specifically, he maintains that Defendant Jane Doe acted with deliberate indifference to his

medical needs when she mistakenly gave Plaintiff the wrong prescription eye drops and then

forgot to reorder the correct prescription. Plaintiff was on fair notice that the Court would

consider summary judgment in favor of Defendant Jane Doe on these claims because they are

coexistent to the claims against the moving Defendants. In fact, even though she has not been

served, Plaintiff still addressed his claims against Defendant Jane Doe in his response in

opposition to the moving Defendants' Motion for Summary Judgment. *See* ECF No. 46 at 2.

Therefore, notice and an opportunity to be heard have already been provided. Additionally, and

more importantly, the summary judgment record before the Court is fully developed. All

evidence Plaintiff could potentially proffer in support of his deliberate indifference claim is in the

record presently before the Court.

As with the moving Defendants, the record simply does not reflect that Defendant Jane

Doe was deliberately indifferent to Plaintiff's medical needs. At best, Plaintiff <u>might</u> have a

---

[4] In his response in opposition, Plaintiff identifies Nurse Jane Doe as Danielle Ternitsky-Gordon.

claim for negligence - although that is far from clear - and that claim is not actionable under the Eighth Amendment.

4.      *Negligence Claims*

Jurisdiction over supplemental claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   However, the Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  The Court of Appeals has stated that "the district court must decline the . . . state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so."  *Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir. 2000) (quoting  *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Because the Court has granted summary judgment as to all Plaintiff's federal claims, and given that there are no extraordinary circumstances which would warrant the exercise of supplemental jurisdiction over the pendent state law claims, the Court will decline to exercise supplemental jurisdiction.  Plaintiff's claims for negligence will be dismissed without prejudice to allow Plaintiff an opportunity to raise these claims in state court.  *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the appropriate Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

## ORDER OF COURT

**AND NOW,** this 3rd day of October, 2013, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the

Motion for Summary Judgment filed by Defendants Secretary of PA Dept. of Corrections,

Corrections Health Care Administrator, and Nurse Katrina Shriver (ECF No. 34) is **GRANTED**.

It is further **ORDERED** that Summary Judgment is **GRANTED** in favor of Defendant

Nurse Jane Doe, *sua sponte.*

The Clerk of Court shall docket this case closed.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules

of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by

Rule 3 of the Federal Rules of Appellate Procedure.


/s *Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge



cc:     DARNELL WILKINS
        HM0887
        Po Box 9999
        LaBelle, PA 15450

        Mary Lynch Friedline
        Office of Attorney General
        Email: mfriedline@attorneygeneral.gov